IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELIZABETH HOROWITZ, et al.

     v.

MICHAEL D. MASON, et al.

:
:
:   Civil Action No. DKC 15-3478
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case are the following motions: a motion to dismiss filed by Defendants Circuit Court Judge Michael D. Mason and Sergeant Shannon Songco of the Montgomery County Sheriff's Department (ECF No. 12); a motion to dismiss filed by Defendants Maury S. Epner and Patrick J. Kearney (ECF No. 18); and motions for a preliminary injunction filed by Plaintiffs Elizabeth, Robert, and Cathy Horowitz (collectively, the "Plaintiffs" or "Horowitzes") (ECF Nos. 33; 34; 35). The relevant issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions to dismiss will be granted. Plaintiffs' motions for a preliminary injunction will be denied as moot.

**I.   Background**

    **A.   Factual Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable

to Plaintiffs.  (ECF No. 1).  Additional facts will be discussed in the analysis section.  Although this case is just the latest in a long string of litigation dating back many years, the facts relevant to this action begin in November 2014.  On November 3, 2014, Judge Mason entered judgment in favor of the law firm Selzer Gurvitch Rabin Wertheimer Polott & Obecny, P.C. ("Selzer Gurvitch") and against Robert and Cathy Horowitz in the Circuit Court for Montgomery County in the amount of $87,727.76.  (ECF No. 18-5).[1]  Mr. and Mrs. Horowitz's appeal of the judgment is pending before the Court of Special Appeals of Maryland and is not at issue in this action.  Rather, Plaintiffs brought this suit to enjoin and collect damages stemming from certain actions taken by Judge Mason, Sergeant Shannon Songco, and two Selzer Gurvitch attorneys: Maury S. Epner, and Patrick J. Kearney (collectively, the "Defendants").

Following Judge Mason's entry of judgment against Robert and Cathy Horowitz, Selzer Gurvitch, appearing through Mr. Epner and Mr. Kearney, began efforts to collect on the judgment.  (ECF No. 1 ¶ 18).  The state court issued a writ of garnishment and two writs of execution on the Horowitzes' personal property.

---

[1] At the motion to dismiss stage, a court may properly consider documents "attached to or incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

(ECF No. 18-4, at 25).   On December 17, the Montgomery County Sheriff's Department levied on the Horowitzes' home by posting notice on the front door.   (ECF No. 1 ¶ 24).   According to Plaintiffs, "[w]hen levying on the house, the Sheriff's deputies, including Sergeant Songco, also confronted [Elizabeth] Horowitz in the driveway." (*Id.* ¶ 25).   Plaintiffs assert that Elizabeth Horowitz, who has been deaf since birth, "was not shown any writ, and was only asked through passing of notes whether her parents were home." (*Id.* ¶ 26).   Elizabeth Horowitz believed that Sergeant Songco was trying to trick her into opening the door.   (*Id.* ¶ 27).   Plaintiffs contend that Mr. Kearney then provided Sergeant Songco with Mr. Horowitz's office telephone number and instructed Sergeant Songco to call Mr. Horowitz and "threaten forcible entry if he would not agree to permit entry voluntarily." (*Id.* ¶ 30).   Plaintiffs allege that Sergeant Songco instructed a subordinate to call Mr. Horowitz and "request permission to enter the Horowitzes' home to levy upon personal property, and to pass along the Epner/Kearney threat, that if he didn't agree, those lawyers would obtain a court order to forcibly enter the Horowitzes' fee[-]owned dwelling house." (*Id.* ¶ 31).   Mr. Horowitz contends that he did not unequivocally refuse entry, but "wanted the chance to respond to whatever legal authority" supported the entry of the home. (*Id.* ¶ 33).

3

On January 16, 2015, Selzer Gurvitch, through Mr. Epner and Mr. Kearney, filed a motion for forcible entry and ancillary relief seeking authorization for the sheriff to enter the Horowitzes' home to levy on their personal property. (ECF No. 18-4, at 27-28). On the same day, the Horowitzes filed a motion to release their property from the levy. They then filed an opposition to Selzer Gurvitch's motion on February 2. On April 23, Judge Mason held a hearing on Selzer Gurvitch's motion for forcible entry. (ECF No. 18-8). On April 27, Judge Mason granted the motion in part and denied it in part by holding that, in lieu of ordering a sheriff to enter the home, the Horowitzes "shall permit [an] appraiser identified by [Selzer Gurvitch] access to their residence . . . for the purpose of conducting such inventory not later than thirty (30) days from the date of this Order and cooperate in the scheduling of such inventory and appraisal." (ECF No. 18-9, at 1-2).

Mr. Epner and Mr. Kearney corresponded with the Horowitzes and their counsel to schedule the appraisal in accordance with Judge Mason's order. (ECF No. 1 ¶¶ 52-56). The parties failed to schedule the appraisal. On June 9, Selzer Gurvitch filed a motion for a show cause order seeking to hold the Horowitzes in contempt for failure to abide by Judge Mason's order. (ECF No. 18-4, at 38). On October 21, Judge Mason held a hearing on the show cause order. (ECF No. 18-11). The following day, Judge

Mason entered an order holding the Horowitzes in contempt and ordering that Mr. Horowitz report to the Montgomery County Detention Center to serve a thirty-day sentence on November 20 unless he permitted the "Sheriff of Montgomery County access to his residence . . . for the purpose of conducting an inventory of and a levy on the personal property." (ECF No. 18-12). The Horowitzes contend that Judge Mason "acted in bad faith, solely to harass, and with willful disregard of [their] constitutional rights." (ECF No. 1 ¶ 74).

On October 26, Mr. Kearney e-mailed the Horowitzes' counsel stating, "I forwarded a copy [of the writ] to the Sheriff, but I believe that the onus is on Mr. Horowitz to schedule a convenient time with the Sheriff for the levy." (*Id.* ¶ 75). On November 5, Sergeant Songco, Mr. Kearney, the Horowitzes, and their counsel corresponded regarding the writ. (*Id.* ¶¶ 76-80).

### B.   Procedural History

On November 16, 2015, Plaintiffs filed the complaint in this court. (ECF No. 1). A purported motion for a temporary restraining order and hearing was attached to the complaint. (ECF No. 1-1). The complaint asserts that Defendants violated 42 U.S.C. § 1983 (Count I) and the Maryland Consumer Debt Collection Act (the "MCDCA"), Md. Code, Com. Law § 14-201 *et seq.* (Count II). On November 17, the court denied Plaintiffs' request for a hearing "because Plaintiffs [had] not shown any

5

grounds for issuance of emergency injunctive relief." (ECF No. 5, at 1).   On November 20, the Horowitzes filed a motion to vacate sentence in state court, and three days later filed a motion to disqualify Judge Mason and reverse the finding of contempt.  (ECF No. 18-4, at 52).

On December 12, 2015, Judge Mason and Sergeant Songco filed the pending motion to dismiss.  (ECF No. 12).  Plaintiffs responded (ECF No. 23), and Judge Mason and Sergeant Songco replied (ECF No. 32).  Mr. Epner and Mr. Kearney filed their pending motion to dismiss on December 18 (ECF No. 18), and that motion is fully briefed (ECF Nos. 28; 31).  On March 14, 2016, Plaintiffs filed their pending motions for a preliminary injunction.  (ECF Nos. 33; 34; 35).

## II.  *Younger* Abstention

As a threshold matter, Defendants argue that principles of abstention mandate that the court dismiss Plaintiffs' claims for injunctive relief in Count I.  Federal courts generally should not interfere with ongoing state proceedings like those in which Plaintiffs are involved.  This doctrine, called *Younger* abstention, recognizes that state courts are capable of deciding federal and constitutional issues without the meddling of federal courts.  *See Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1396 (4th Cir. 1994); *see also*

*Younger v. Harris*, 401 U.S. 37 (1971).[2]   Although the doctrine

began as a means to keep federal courts out of state criminal

proceedings, it has since been expanded to a limited number of

civil proceedings, including proceedings involving a state

court's contempt process.   As discussed in an earlier memorandum

opinion:

> [T]he Supreme Court [of the United States]
> has held that federal courts should abstain
> from adjudicating challenges to state court
> contempt processes.  *Pennzoil Co. v. Texaco,
> Inc.*, 481 U.S. 1 (1987); *Juidice v. Vail*,
> 430 U.S. 327 (1977).   Abstention is
> appropriate because "[a] State's interest in
> the contempt process, through which it
> vindicates the regular operation of its
> judicial system, so long as that system
> itself affords the opportunity to pursue
> federal claims within it, is surely an
> important interest."  *Juidice*, 430 U.S. at
> 335.

(ECF No. 5, at 2-3).

---

[2] Mr. Epner and Mr. Kearney focus their abstention argument
on *Colorado River* abstention (*see* ECF No. 18-1, at 8-11), while
Judge Mason and Sergeant Songco discuss *Younger* abstention (*see*
ECF No. 12-1, at 6-7).   The *Colorado River* doctrine may, in
fact, counsel abstention in this case.  *See Colorado River Water
Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)
(providing for abstention of parallel actions due to
"considerations of wise judicial administration, giving regard
to conservation of judicial resources and comprehensive
disposition of litigation" (citation and internal quotation
marks omitted)).   The United States Court of Appeals for the
Fourth Circuit, however, has stated consistently that district
courts should abstain under *Colorado River* only in rare
exceptional circumstances.  *See, e.g.*, *Chase Brexton Health
Servs, Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005).
Accordingly, although multiple abstention doctrines may apply,
*Younger* abstention is most appropriate in this case.

Plaintiffs argue that "Defendants' *Younger* abstention arguments are invalidated by the law of void judgments in *Finch v. LVNV Funding, LLC*, [212 Md.App. 748 (2013)]." (ECF No. 23, at 7). In *Finch*, the Court of Special Appeals noted that a void judgment "is open to attack or impeachment in any proceeding, direct or collateral, and at any time or place, at least where the invalidity appears upon the face of the record. It is not entitled to enforcement." *Finch*, 212 Md.App. at 768 (citation and internal quotation marks omitted). Plaintiffs' reliance on *Finch* is misguided. Plaintiffs are not asserting that any underlying *judgment* is void; rather, they are arguing that Judge Mason's orders attempting to *enforce* the judgment are improper. (*See* ECF No. 23, at 3-4 (challenging Judge Mason's "unconstitutional/illegal orders of April 23, and October 22, 2015")). Moreover, the underlying issue in *Finch* was a collateral attack of a state district court judgment brought in a state circuit court. *Id.* at 769. Thus, any "void judgment rule" presented in *Finch* is not relevant to the current dispute and does not preclude the application of *Younger* abstention in federal court.

A federal court should abstain from interfering in state proceedings if there is "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial,

or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003) (citing *Middlesex Cnty Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)).[3]  If these three requirements are met, abstention is warranted unless the district court "finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Juidice*, 430 U.S. at 338 (citation and internal quotation marks omitted).

Here, the elements warranting abstention are met.  There is an ongoing state judicial proceeding in the Circuit Court for Montgomery County and the Court of Special Appeals.  The proceeding implicates the important state interest of enforcing a judicial contempt order.  The proceedings provide an adequate

---

[3] Another circuit has noted that the Supreme Court modified slightly the *Middlesex* factors in *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.Ct. 585 (2013) by holding that only three types of state proceedings trigger an important state interest.  *See Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192-93 (1st Cir. 2015).  Because the *Sprint* court reiterated that contempt proceedings trigger *Younger* abstention, the general approach in *Middlesex* still applies here.

opportunity for Plaintiffs to raise the issues they attempt to raise in this action.   Critically, Plaintiffs have done so in the state court action in several briefs, at multiple hearings, and on appeal.

Moreover, Plaintiffs' conclusory assertions that the state proceeding is motivated by bad faith or a desire to harass cannot overcome *Younger* abstention.   (*See* ECF No. 1 ¶ 74). Plaintiffs have pleaded no facts showing that any of Defendants' actions were motivated by bad faith or a desire to harass, or by anything other than a desire to enforce a court judgment. Similarly, Plaintiffs' do not sufficiently allege that the Maryland Rule of Civil Procedure invoked by Mr. Epner and Mr. Kearney to enforce the judgment, Md. Rule 2-651, "flagrantly" and "patently" violates "express constitutional prohibitions" in order to trigger the "narrow exception[]" allowing a federal court to intervene in this case.   *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); *see Juidice*, 430 U.S. at 338.   Plaintiffs instead assert that Defendants' *application* of the rule violates the Constitution.   *See South Carolina Ass'n of Sch. Adm'rs v. Disabato*, 460 F.App'x 239, 244 (4th Cir. 2012) (noting that a limited constitutional challenge to a statute "essentially concedes" that it is not "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an

effort might be made to apply it" (citing *Younger*, 401 U.S. at 53-54)).    Plaintiffs are, of course, able to raise such constitutional challenges, and their ongoing state court proceeding is the appropriate forum in which to do so.  *Kaplan v. CareFirst, Inc.*, 614 F.Supp.2d 587, 595 (D.Md. 2009) ("So long as [the plaintiff] has the opportunity to raise his federal claims in the state court, . . . the intervention of a federal court is not necessary for the protection of his federal rights." (citation and internal quotation marks omitted)).

In short, this case presents the quintessential situation warranting the invocation of *Younger* abstention.  "The *Younger* doctrine is founded upon principles of comity and federalism, and rests upon the notion that 'the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'"  *Id.* at 592 (quoting *Younger*, 401 U.S. at 44).  This doctrine arises out of a strong preference "against the exercise of [federal] jurisdiction where particular kinds of state proceedings have already been commenced."  *Id.* (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs.*, 477 U.S. 619, 626 (1986)).  Accordingly, Plaintiffs claims for injunctive relief in Count I will be dismissed as to all Defendants.

## III. Absolute Immunity from Suit for Judge Mason and Sergeant Songco

Defendants argue that judicial immunity prevents Plaintiffs' suit against Judge Mason and quasi-judicial immunity prevents the suit against Sergeant Songco. (ECF No. 12-1, at 8-13). Plaintiffs counter that immunity is not appropriate because Judge Mason lacked jurisdiction for his orders, and quasi-immunity does not apply to void judgments. (ECF No. 23, at 8-9).

"Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citations omitted). The Supreme Court has held that judicial immunity "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction." *Id.* at 11-12 (citations omitted). This means that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the *clear* *absence* of all

jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978) (emphasis added) (citation and internal quotation marks omitted). Plaintiffs' argument that the state court lacked jurisdiction over the matter misses the mark and conflates their substantive constitutional arguments with jurisdictional arguments. The Supreme Court confronted a similar situation in *Mireles*, when the respondent brought suit against a judge for authorizing the excessive use of force in carrying out a court order. The Supreme Court held that the judge was immune because "such an action — taken in the very aid of the judge's jurisdiction over a matter before him — cannot be said to have been taken in the absence of jurisdiction." *Id.* at 13. Plaintiffs' contention that Judge Mason lacked jurisdiction to issue an order enforcing a judgment is unpersuasive. They may argue, on appeal, that Judge Mason was incorrect or even that the order exceeded his authority, but this does not mean that the circuit court lacked jurisdiction to issue the order. Accordingly, Plaintiffs' claims against Judge Mason will be dismissed.

Quasi-judicial immunity bars Plaintiffs' suit against Sergeant Songco in a similar manner. As Judge Blake has noted:

> Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that those persons are considered an arm of the judicial officer who is immune."

> *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.
> 1994).  The basis for affording non-judicial
> officials absolute immunity is to avoid the
> "danger that disappointed litigants, blocked
> by the doctrine of absolute immunity from
> suing the judge directly [would] vent their
> wrath on clerks, court reporters, and other
> judicial adjuncts." *Sindram v. Suda*, 986
> F.2d 1459, 1461 (D.C. Cir. 1993) (alteration
> in original) (quoting *Dellenbach v.
> Letsinger*, 889 F.2d 755, 763 (7th Cir.
> 1989)).  Courts have therefore extended
> absolute immunity to protect, among others,
> clerks of court, law enforcement officers,
> and others who enforce court orders. *See,
> e.g.*, *Foster v. Walsh*, 864 F.2d 416, 417-18
> (6th Cir. 1988) (holding the clerk of court
> to be absolutely immune for issuing an
> erroneous warrant pursuant to the court's
> order); *Henry v. Farmer City State Bank*, 808
> F.2d 1228, 1238-39 (7th Cir. 1986) ("[Police
> officers, sheriffs, and other court officers
> who act in reliance on a facially valid
> court order are entitled to quasi-judicial
> immunity from suit.").

*Kendrick v. Cavanaugh*, No. CCB-10-2207, 2011 WL 2837910, at *4
(D.Md. July 14, 2011).  Here, Plaintiff alleges that Sergeant
Sognco took action to enforce Judge Mason's orders.  She was
acting as an arm of the court, and is therefore immune from
suit.  Accordingly, Plaintiffs' claims against Sergeant Songco
will be dismissed.[4]

---

[4]  Judge Mason and Sergeant Songco also have statutory
immunity under Maryland Law.  Md. Code, Cts. & Jud. Proc. § 5-
522(b); State Gov't § 12-101 (listing sheriff deputies and
circuit court judges as state personnel).

## IV.  Failure to State a Claim Against Mr. Epner and Mr. Kearney

### A.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).  In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions

15

couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B. Analysis**

**1. Section 1983 Claim Against Mr. Epner and Mr. Kearney**

Defendants argue that Plaintiffs fail to state a § 1983 claim against Mr. Epner and Mr. Kearney. Plaintiffs assert that the fact that Mr. Epner and Mr. Kearney "twice directed [] Songco to threaten all three Horowitzes without any substitutive [*sic*] legal authority, or explicit court order to do so" gives rise to a § 1983 claim. (ECF No. 28, at 4). Specifically, Plaintiffs allege that Mr. Epner and Mr. Kearney provided Sergeant Songco and her subordinate with Mr. Horowitz's telephone number "and instructed them to call Mr. Horowitz and

16

threaten forcible entry." (ECF No. 1 ¶ 30-31). Plaintiffs also contend that Mr. Epner and Mr. Kearney "threatened [Plaintiffs] with further court action." (*Id.* ¶ 53). The only other conduct the complaint ascribes to Mr. Epner and Mr. Kearney is participation in court proceedings and sending correspondence in an attempt to effectuate the court order.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Defendants move to dismiss on several grounds, including that Mr. Epner and Mr. Kearney were not acting under the color of law. (ECF No. 18-1, at 12). The only fact in the complaint that *may* allege that Mr. Epner and Mr. Kearney acted under the color of law is the allegation that they coordinated with Sergeant Songco to communicate with Plaintiffs. It is not necessary, however, to decide this issue because Plaintiffs fail to show facts plausibly stating a § 1983 claim. Plaintiffs have not alleged how the two "threats" made by Mr. Epner and Mr. Kearney caused the deprivation of Plaintiffs'

rights, privileges, or immunities protected by the Constitution or other law.   Conclusory assertions that Mr. Epner and Mr. Kearney violated Plaintiffs' constitutional rights are not sufficient to survive a motion to dismiss.   Rather, Mr. Epner and Mr. Kearney were merely using the state court system to effectuate a judgment for Selzer Gurvitch in accordance with court orders.   Nothing in the communications deprived Plaintiffs of their rights, privileges, or immunities in any way. Accordingly, Count I will be dismissed against Mr. Epner and Mr. Kearney.

### 2.   MCDCA Claims

Plaintiffs allege that Mr. Epner and Mr. Kearney violated three provisions of the MCDCA.   *See* Md. Code §§ 14-202(1), (6), (8).   Defendants argue that the legal fees Selzer Gurvitch is attempting to collect are not the result of a "consumer transaction" covered by the MCDCA.   In the alternative, Defendants contend that the complaint fails to allege any violation of the MCDCA.   Assuming *arguendo* that the debt is the result of a consumer transaction and that Mr. Epner and Mr. Kearney are "collectors," Plaintiffs nevertheless fail plausibly to show that either Mr. Epner or Mr. Kearney violated the MCDCA.

First, Plaintiffs have not alleged that Mr. Epner or Mr. Kearney threatened force or violence.   Md. Code, Comm. Law § 14-202(1).   The closest threat of force was when Sergeant Songco

and her subordinate called Mr. Horowitz "to pass along the Epner/Kearney threat, that if he didn't agree, those lawyers would obtain a court order to forcibly enter the Horowitzes' fee owned dwelling house." (ECF No. 1 ¶¶ 30-31). Plaintiffs point to Exhibit A of the complaint to show that Mr. Epner and Mr. Kearney "threatened 'forcible entry' repeatedly." (*See* ECF No. 28, at 9). Exhibit A is a motion Mr. Epner and Mr. Kearney filed in state court requesting authorization for the sheriff to gain access to the Horowitzes' property by forcible entry. Such a motion does not run afoul of the MCDCA.

Furthermore, Plaintiffs do not plead facts showing that Mr. Epner and Mr. Kearney "communicate[d] with the debtor or a person related to him . . . [in a] manner as reasonably can be expected to abuse or harass the debtor." Md. Code, Comm. Law § 14-202(6). None of Mr. Epner's or Mr. Kearney's alleged conduct can reasonably be viewed as abusive or harassing. Mr. Epner and Mr. Kearney communicated with Plaintiffs that they would seek a court order for forcible entry. (ECF No. 1 ¶¶ 30-31). They then communicated with Plaintiffs and their counsel in an attempt to effectuate court orders. (*Id.* ¶¶ 52-56, 75-80). These communications fall far short of being abusive or harassing.

Finally, Plaintiffs do not plead facts adequately supporting the assertion that Mr. Epner and Mr. Kearney violated

the MCDCA by "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code, Comm. Law § 14-202(8). This provision of the MCDCA prohibits debt collectors from attempting to collect a debt they know is invalid. *See Marchese v. JPMorgan Chase Bank, N.A.*, 917 F.Supp. 2d 452, 464 (D.Md. 2013). "In order to succeed on such a claim, the express language of the MCDCA requires that Plaintiffs allege that Defendants acted with knowledge as to the *invalidity* of the debt." *Stewart v. Bierman*, 859 F.Supp.2d 754, 769 (D.Md. 2012) (emphasis in original) (citation omitted). Here, Plaintiffs do not assert the debt that Mr. Epner and Mr. Kearney are attempting to collect is invalid. Therefore, Plaintiffs cannot assert that Mr. Epner and Mr. Kearney are acting with knowledge that the debt is invalid. Rather, Plaintiffs assert Mr. Epner and Mr. Kearney improperly attempted to collect the debt. (ECF No. 28, at 9 ("Epner and Kearney had no basis in substantive law to threaten the Horowitzes with forcible entry, arrest, and monetary sanctions to coerce home invasion when collecting their debt.")). Such allegations do not state a claim under Md. Code, Comm. Law § 14-202(8). Accordingly, Plaintiffs' MCDCA claims against Mr. Epner and Mr. Kearney will be dismissed.

**V.    Conclusion**

For the foregoing reasons, Defendants' motions to dismiss will be granted.   Plaintiffs' motions for a preliminary injunction will be denied as moot.   A separate order will follow.

                                   /s/
_____
DEBORAH K. CHASANOW
United States District Judge